IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY BASS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>I.C. SYSTEM, INC., )<br>)<br>Defendant. ) | Case No. 17 C 3594 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Henry Bass contends that a debt collector, I.C. System, Inc. (ICS), attempted to collect $79.35 in "collection agency fees" on top of the outstanding debt he owed, but the contract that gave rise to Bass's debt did not actually authorize the collection fee. He alleges that ICS, in doing so, violated the Fair Debt Collection Practices Act. Both parties have moved for summary judgment.

### Background

Bass, an Illinois resident, was a customer of T-Mobile, a cellular phone service provider. In his contract with T-Mobile, Bass agreed to pay "collection agency fees." D.E. 1, Pl.'s Ex. D ¶ 14 (T-Mobile Terms & Conditions). Though the contract did not specify the amount of the fees, it stated that "collection agency fees are liquidated damages intended to be a reasonable advance estimate of our costs resulting from late payments and nonpayments by our customers; these costs are not readily ascertainable and are difficult to predict or calculate at the time these fees are set." *Id.* Bass was

delinquent on his account, so T-Mobile referred a balance of $856.89 and a fee of $79.35 to ICS. ICS then notified Bass it was attempting to collect both amounts. Bass did not pay ICS.

Bass filed the present lawsuit in May 2017. ICS moved to dismiss Bass's suit, a motion the Court denied. Both parties have moved for summary judgment.

## Discussion

Bass alleges that the contract that he had with T-Mobile did not authorize the $79.35 fee that T-Mobile assessed and that even if it did, the contractual term imposing the fee is unenforceable because, as he contends, it is a punitive liquidated damages clause. For these reasons, Bass contends, ICS was not authorized to attempt to collect the fee. He contends that by attempting to collect the fee, ICS violated the Fair Debt Collection Practices Act (FDCPA).

First, Bass contends ICS violated FDCPA by making a "false, deceptive, or misleading representation." 15 U.S.C. § 1692e. The statute provides numerous categories of potential misrepresentations. Bass argues that ICS's conduct falls into two of these categories: "the false representation of the character, amount, or legal status of any debt," *id.* § 1692e(2)(A), and "the threat to take any action that cannot legally be taken." *Id.* § 1692e(5). Bass also argues that ICS violated 15 U.S.C. § 1692f, which prohibits a debt collector from using "unfair or unconscionable means" to collect a debt, including "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt[.]" *Id.* § 1692f(1).

The resolution of Bass's claims turns on the contract imposing the fee. If the T-Mobile contract does not actually authorize the fee or is otherwise unenforceable, then

ICS attempted to collect a debt that wasn't authorized (in violation of section 1692f) and falsely represented the status of the debt (in violation of section 1692e). If the contract does authorize the fee and is otherwise enforceable, then ICS acted consistently with the FDCPA.

On a motion for summary judgment on a claim on which the moving party bears the burden of proof, the movant "must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). When the parties have cross-moved for summary judgment, as here, the Court reviews one party's motion, taking all facts in the light most favorable to the non-moving party, then does so for the other party's motion, taking the facts in favor of the opposite party. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 648 (7th Cir. 2003).

The Court organizes its discussion of the parties' briefing by issue: whether Bass has standing; whether the FDCPA may apply to ICS; whether either party is entitled to summary judgment on the merits of Bass's claims; and whether ICS is entitled to summary judgment on its affirmative defense.[1]

**I.      Standing**

Under Article III, a plaintiff may sue in federal court only if "(1) [the plaintiff]

---

[1] ICS does not dispute that, for purposes of the FDCPA, Bass is a "consumer," ICS is a "debt collector," and a "debt" is at issue. *See* 15 U.S.C. § 1692a. "Consumer" is the term used in the FDCPA to refer to a debtor, which the Court also employs.

suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). ICS contends that Bass failed to establish the first element of standing: because he never made a payment in reliance on ICS's communications, he did not suffer an injury.

ICS raised this argument in its reply brief, so Bass lacked an opportunity to respond. But the Court finds that Bass has standing to bring his FDCPA claims, because the FDCPA protects consumers from harms beyond erroneous payments to debt collectors. Congress is "well positioned to identify intangible harms that meet minimum Article III requirements[.]" *Id.* at 1549. In the FDCPA, Congress acted to "protect consumers against debt collection abuses," 15 U.S.C. § 1692(e), by "prohibit[ing] certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 374 n.1 (2013). "The statute is designed to provide information that helps consumers to choose intelligently[.]" *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009).

Bass can establish an injury that meets the requirements for standing under Article III. If the facts as claimed by Bass are true, ICS provided an inaccurate summary of his debt, as he did not owe the collection agency fee that ICS asserted he did. ICS's purportedly inaccurate communications injured Bass's interest in "receiving truthful information about one's financial affairs," which exist even where "the plaintiff did not act upon the misinformation." *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739 (N.D. Ill. 2017) (holding that a plaintiff who received an allegedly erroneous collection letter but never made payments had standing to

assert FDCPA claims). Other courts in this district have found standing for similarly-situated plaintiffs, and the Court agrees with these decisions. *See Aguirre v. Absolute Resolutions Corp.*, No. 15 C 11111, 2017 WL 4280957, at *3 (N.D. Ill. Sept. 27, 2017); *Keys v. Collection Prof'ls Inc.*, No. 16 C 8452, 2018 WL 1469006, at *3 (N.D. Ill. Mar. 26, 2018).

The Court is unpersuaded by ICS's remaining argument on standing, which rests on cases addressing the *merits* of an FDCPA claim. A case in which a plaintiff's claim is rejected on the merits, such as *Bernal v. NRA Group, LLC*, No. 16 C 1904, 2017 WL 4948544 (N.D. Ill. Nov. 1, 2017), hardly establishes the proposition that future plaintiffs lack *standing* to assert similar claims—particularly in the face of the decisions finding standing exists for plaintiffs with claims indistinguishable from this one. Bass has standing to assert his claim.

## II.     Application of the FDCPA to ICS

In cross-moving for summary judgment, ICS presents two reasons why the FDCPA does not apply to its attempts to recover from Bass. Though Bass's briefing permits both of these arguments to drift by without direct reply, the Court finds neither to be compelling.

First, ICS contends that T-Mobile, not ICS, imposed the collection agency fee at the center of this suit. Because ICS did not impose the allegedly unlawful fee, ICS contends, it cannot be liable. The Court finds that this is at odds with basic FDCPA law. In the Seventh Circuit, the FDCPA is a "strict liability statute." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009). Accordingly, "[d]ebt collectors may not make false claims, period." *Randolph v. IMBS, Inc.*, 368 F.3d

5

726, 730 (7th Cir. 2004). In *Turner v. JVDB & Associates, Inc.*, 330 F.3d 991 (7th Cir. 2003), the Seventh Circuit reversed a district court's grant of summary judgment to a debt collector sued under the FDCPA who argued in defense that it lacked knowledge that the plaintiff's debt had been discharged in bankruptcy. *Id.* at 994-95. In rejecting this position, the Seventh Circuit reasoned there was no knowledge element to the FDCPA, so it did not matter whether the debt collector *knew* that it was trying to collect a debt that, after the bankruptcy discharge, was no longer owed. *Id.* at 999. The only thing that matters is whether ICS's claim that Bass owed the collection agency fee was false; whether the representation was intentionally false was immaterial.[2] *See also Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) (the FDCPA does not require a showing the debt collector was "deliberate, reckless, or even negligent").

For these reasons, the Court does not find the cases on which ICS relies, such as *Cornette v. I.C. System, Inc.*, 280 F. Supp. 3d 1362 (S.D. Fla. 2017), persuasive. In *Cornette*, the court held that a debt collector could rely on the representations of a creditor, reasoning that the FDCPA was *not* a strict liability statute, even while acknowledging case law from the Eleventh Circuit, in which that court sits, indicated otherwise. *Id.* at 1370-71 (*citing LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). The Court declines to follow *Cornette*, as it would be at odds with the Seventh Circuit's reading of the FDCPA as

---

[2] The FDCPA mitigates this arguably harsh rule through the *bona fide* error defense. *See* 15 U.S.C. § 1692k(c). ICS raises this defense, which the Court subsequently addresses.

6

a strict liability statute, a reading arguably shared by the Eleventh Circuit. *See, e.g., Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 n.4 (11th Cir. 2014) (describing the FDCPA as a "strict liability" statute, but noting a debt collector's "knowledge and intent" is relevant to the *bona fide* error defense); *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011) (holding the FDCPA imposes a "general rule of strict liability"). The remaining cases that ICS cites likewise follow the incorrect premise that the FDCPA is not a strict liability statute, so the Court declines to follow their reasoning.

Next, ICS contends that, pursuant to 15 U.S.C. § 1692g(a), it sent a letter to Bass stating he had thirty days to contest the validity of the debt. Bass never did so, so ICS argues that he cannot now contest the validity of the fee. If a debt collector is communicating with a consumer about a debt, section 1692g(a) requires the collector to send a notice that includes (in relevant part) "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." *Id.* § 1692g(a)(3). ICS essentially contends that section 1692g(a)(3) imposes a threshold requirement, under which a plaintiff must timely dispute the debt following notice under 1692g to bring a claim under section 1692e or 1692f.

Yet this contention is at odds with the law in the Seventh Circuit and others. In *Evans v. Portfolio Recovery Associates, LLC*, 889 F.3d 337 (7th Cir. 2018), the Seventh Circuit declined to interpret the term "disputed debt," as used in section 1692e, by the definition of "disputed" used in section 1692g. *Id.* at 347. Though the direct holding of *Evans* does not apply here, the Seventh Circuit's reasoning is notable, as it stated that

7

"[n]othing in the text of the FDCPA suggests that a debtor's ability to state a claim under § 1692e is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g." *Id.* (*quoting Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 392 (4th Cir. 2014)). The Fourth Circuit case on which the Seventh Circuit relied, *Russell*, expressly rejected the proposition that a consumer who fails to dispute a debt within thirty days of receiving notice under section 1692g(a)(3) cannot later bring a claim under another provision of the FDCPA. *Russell*, 763 F.3d at 392.

The Court adopts the reasoning employed by the Fourth Circuit in rejecting ICS's proposed rule. First, treating section 1692g(a)(3) as imposing a prerequisite for other FDCPA actions would be at odds with the "remedial nature" of the FDCPA, which "encourag[es] consumers who were the target of unlawful collection efforts to bring civil actions." *Id.* at 393. Additionally, if section 1692g(a)(3) imposed a threshold condition for other FDCPA actions, then, for those consumers who failed to timely object to the validity of their debt, collectors would be free to engage in the very "abusive, deceptive, and unfair debt collection practices" that Congress sought to regulate, as those consumers could no longer bring an FDCPA claim to defend their rights. Such a reading would "thwart" the FDCPA's purpose; it would insulate debt collectors from liability rather than expose them to it. *Id.* at 394. The Court also notes that many other courts to consider the question have adopted the same reading. *See, e.g., McLaughlin v. Phelan Hallinan & Schmeig, LLP*, 756 F.3d 240, 247 (3d Cir. 2014); *Wong v. Alt. Claims Mgmt., LLC*, No. 17 Civ. 3133 (ER), 2017 WL 5635533, at *5 (S.D.N.Y. Nov. 22, 2017); *Muller v. Midland Funding, LLC*, No. 14-CV-81117-KAM, 2015 WL 2412361, at *12 (S.D. Fla. May 20, 2015).

8

Bass's failure to timely dispute the validity of his debt under section 1692g(a)(3) did not affect his ability to sue under other provisions of the FDCPA. The Court therefore denies ICS's motion for summary judgment on this ground.

### III. FDCPA merits

Bass argues he is entitled to summary judgment on the merits of his FDCPA claims for three reasons. First, Bass argues the contract only authorized T-Mobile to recover the actual costs of collection, but the collection agency fee was impermissibly based on a percentage of his overall debt. Next, Bass contends that the T-Mobile contract only authorized the collection of costs that were already incurred, and ICS acted prematurely by trying to recover costs before it finished collecting the debt. Finally, Bass argues that the term imposing the collection agency fee is, under Illinois law, an unenforceable liquidated damage clause. ICS likewise seeks summary judgment on each of these points.

#### A. Actual costs

Bass contends that the collection agency fee was based on a percentage of his overall debt, but the contract only authorized T-Mobile to assess a fee based on its actual costs of collection. ICS argues that either measure could be an appropriate approach. Though the parties' dispute arises in the context of Bass's FDCPA claims, it is largely a dispute over the meaning of the contract: whether Bass, through the T-Mobile contract, authorized the fee in the manner that it was calculated.

The contract itself is spare on details: "We may use a collection agency to collect past due balances and you agree to pay collection agency fees. . . . Late

9

payment, non-payment, or collection agency fees are liquidated damages intended to be a reasonable advance estimate of our costs resulting from late payments and non-payments by our customers; these costs are not readily ascertainable and are difficult to predict or calculate at the time that these fees are set." D.E. 1, Pl.'s Ex. D ¶ 14 (T-Mobile Terms & Conditions).[3] Under this contractual term, ICS would be in the clear if it could establish that the $79.35 corresponded to a "collection agency fee[]" that was "a reasonable advance estimate of [T-Mobile's] costs[.]" *Id.*

But the Court cannot resolve this dispute, because neither party has clarified how T-Mobile calculated the collection agency fee. ICS introduces one document that states that T-Mobile determined the fee "based on the outstanding balance" of Bass's debt. D.E. 34, Def.'s Ex. E at ICS000068 (T-Mobile e-mail to ICS). But this information does not resolve whether a reasonable jury could find that a nearly $80 fee was a "reasonable advance estimate of [T-Mobile's] costs." In short, the record is insufficient to entitle either party to summary judgment on this basis. "[T]he process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *R.J. Corman*, 335 F.3d at 648. *See also Bernal v. NRA Grp., LLC*, No. 16 C 1904, 2017 WL 2362568, at *2 (N.D. Ill. May 31, 2017) (denying cross-motions for summary judgment in an FDCPA case in which neither party identified how a collection fee would be calculated).

---

[3] ICS inexplicably states that "the plain meaning of the Terms & Conditions provides the exact calculations for . . . collection fees imposed by T-Mobile." Def.'s Reply Mem. at 10. The contract introduced into the record doesn't provide anything approaching "exact calculations" for collection agency fees.

### B. Incurred costs

Next, Bass contends the contract only authorizes T-Mobile to recover collection costs that were already incurred, but ICS attempted to recover the collection agency fee before it was actually incurred. Bass concludes that ICS's attempt to collect this part of the debt before it was actually owing violated the FDCPA.

Bass does not flesh this argument out in detail, though there are a line of cases that could support this reading. *See, e.g., Annunziato v. Collecto, Inc.*, 207 F. Supp. 3d 249, 259-61 (E.D.N.Y. 2016); *Gathuru v. Credit Control Servs., Inc.,* 623 F. Supp. 2d 113, 120 (D. Mass. 2009); *Munoz v. Pipestone Fin., LLC*, 513 F. Supp. 2d 1076, 1083 (D. Minn. 2007). But all of these cases share a common thread: the underlying contract noted, in some fashion, that the consumer would be liable for costs that had been incurred. *Annunziato,* 207 F. Supp. 3d at 260-61 ("I agree to pay [creditor] all of the costs associated with the collection of my delinquent account"); *Gathuru*, 623 F. Supp. 2d at 120 (consumer agreed to pay "[creditor's] collection costs"); *Munoz*, 513 F. Supp. 2d at 1080 ("you agree to pay all collection expenses actually incurred by us"). The contract between Bass and T-Mobile differs in notable fashion: it commits Bass to pay a what amounts to a "reasonable *advance* estimate" of T-Mobile's costs. D.E. 1, Pl.'s Ex. D ¶ 14 (emphasis added). The contract further notes "these costs are not readily ascertainable and are difficult to predict or calculate at the time that these fees are set." *Id.* Thus the contract envisions that the assessment of the fee *precedes* whatever costs T-Mobile incurs. In *Vayngurt v. Southwest Credit Systems, LP*, No. 16-CV-2261(ARR)(VMS), 2016

11

WL 6068132 (E.D.N.Y. Oct. 14, 2016), a court interpreting the same contractual language reached the same outcome. *Id.* at *3. It found that the "plaintiff agreed to pay a reasonable estimate of T-Mobile's incurred costs *in advance*, [so] the collection fee was due at the time the notice was sent." *Id.*

Even if Bass could show the contract only authorized recovery of actually-incurred collection costs, the Court's holding would not change. As ICS correctly notes, Bass's interpretation of the contract would require a debt collector to make two visits to the consumer: the first to collect the debt (and incur the collection costs) and the second to collect the collection costs. Not only does this interpretation impose an impracticable outcome, it is not clear what would be gained through its adoption. As Judge Gary Feinerman appropriately asked: "How could it possibly harm or mislead the debtor for a debt collector to set forth both amounts (the principal amount due and the collection fee) in a single letter, as opposed to first collecting the original debt and only then revealing and seeking payment of the collection fee?" *Bernal*, 2017 WL 4948544, at *3. Indeed, "[a] consumer would see the clear benefit of being able to address both amounts simultaneously in his negotiations with the collection agency." *Vayngurt*, 2016 WL 6068132, at *4. The Court therefore denies Bass summary judgment on this basis but finds, as ICS contends, that no jury could find that ICS attempted to recover the fee prematurely.

C. **Liquidated-damages clause**

Finally, Bass argues he is entitled to summary judgment because the clause establishing collection agency fees is a liquidated damages clause that is unenforceable under Illinois law. Because it is unenforceable, Bass argues, ICS

12

was attempting to collect a debt that he did not owe, which he contends entitles him to summary judgment. As ICS correctly contends, Bass's argument is misguided, as the Illinois rule precluding punitive liquidated damages is inapposite to the clause at issue—which simply isn't a liquidated damages clause.

A liquidated damages clause is one that *liquidates* damages. *See Liquidate*, Black's Law Dictionary (2d. pocket ed. 2001) ("To determine by litigation or agreement the amount of (damages or indebtedness)"). The contract doesn't determine the amount of the collection agency fee in advance. If the contract said that the "customer will be liable for $79.35 in collection agency fees," then it would be a liquidated damages clause to which the Illinois rule could be applied. But it doesn't; it only states that the customer will be liable for the fee, without defining its amount. Bass acknowledges this briefly but concludes that only serves as another reason it is an unenforceable liquidated damages clause. The better conclusion is that it is a garden-variety provision that assigns costs and not a liquidated damages clause, no matter how the contract describes it. *See Kojetin v. CU Recovery, Inc.*, No. Civ. 97-2273 (JRT/RLE), 1999 WL 33916416, at *5 n.2 (D. Minn. Feb. 17, 1999) (finding that a clause that "memorializes" that the consumer would be liable for certain costs, without fixing the costs in advance, is not a liquidated damages clause). Because it is not a liquidated damages clause, the Illinois case law prohibiting punitive liquidated damages is inapposite. Again, ICS has the better of this argument; the Court denies summary judgment to Bass on this ground and finds that the contractual provision is not an unenforceable liquidated damages clause.

13

**IV.     Affirmative defense**

ICS moves for summary judgment on its affirmative defense, the *bona fide* error defense defined by 15 U.S.C. § 1692k(c). "To qualify for the bona fide error defense, [the defendant] must make three showings under § 1692k(c): (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error . . . ; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

Bass contends that no reasonable jury could find for ICS on the third element, as ICS lacked procedures to avoid similar errors. A "procedure" to avoid errors must be "a series of steps," "internal controls," or "processes" intended "to avoid mistakes[.]" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010). In contrast, a "thinly specified policy" that "say[s] nothing about what action to take" in response to a perceived error is insufficient. *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015).

The only evidence that ICS introduces in support of its procedures is its "Best Practices Policy." The policy lists the conduct that the FDCPA prohibits and identifies five "core principles," such as "transparency" and "fairness," that employees should follow. D.E. 36, Def.'s Ex. 1. Notably absent, however, are concrete "steps," "controls," or "processes" by which ICS personnel can avoid pursuing debts that the consumer does not actually owe. Thus the cited policy is of the sort that *Leeb* says is inadequate to satisfy section 1692k(c): "a thinly specified 'policy,' allegedly barring some action but saying nothing about what action to take"

14

instead. *Leeb*, 806 F.3d at 900. ICS has not presented any other evidence of a procedure it employs to avoid mistakenly pursuing unauthorized debts.

Because ICS did not establish that it maintains "procedures reasonably adapted to avoid" the sort of error at issue, the Court concludes that ICS is not entitled to summary judgment on its *bona fide* error defense.

## Conclusion

For the foregoing reasons, the Court denies both parties' motions for summary judgment [dkt. nos. 27 & 35] but finds, pursuant to Federal Rule of Civil Procedure 56(g), that ICS did not attempt to collect the fee prematurely and that the fee was not an unenforceable liquidated damages clause. The case is set for a status hearing on July 18, 2018 at 8:30 a.m. to set a trial date and discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 11, 2018